UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARRY ASHCROFT,<br><br>                 Plaintiff,<br><br>v.<br><br>SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP, et al.,<br><br>                 Defendants. | Case No. 24-cv-0035-MMA-MMP<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>[Doc. No. 25] |

      On October 31, 2024, Defendant Southern California Permanente Medical Group ("Defendant"), filed a motion to dismiss Plaintiff Sherry Ashcroft's ("Plaintiff") second amended complaint. Doc. No. 25. Plaintiff filed a response in opposition, to which Defendant replied. Doc Nos. 26–27. Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1, the Court took this matter under submission on December 10, 2024. Doc. No. 28. For the reasons herein, the Court **GRANTS** Defendant's motion and **DISMISSES** Plaintiff's second amended complaint.

# I. Background[1]

Defendant, a private health care organization, employed Plaintiff as an office assistant. Doc. No. 24 ("SAC") ¶¶ 3–4. In early August 2021, following the COVID-19 pandemic outbreak, Defendant issued a mandate requiring that all employees receive COVID-19 vaccinations before September 31, 2021, or otherwise obtain a medical or religious exemption. *Id.* ¶¶ 7–8. Plaintiff "is a follower of the Christian faith" who believes "that her body belongs to God and is a temple of the Holy Spirit" that "it is against [her] religious beliefs to ingest or inject her body with possible harmful substances" and that her "[d]ue to her pro-life beliefs, [her] faith strongly opposes injecting her body with the COVID-19 vaccine[]" as she believes that the manufacturers of the vaccine use aborted fetal tissue, the lining of aborted fetal tissue, or both in producing the vaccine. *Id.* ¶¶ 8–11. While she was unwilling to receive the COVID-19 vaccination, she was "willing to adhere to safety protocols, such as regular testing and masking." *Id.* ¶ 16.

On previous occasions, Plaintiff provided Defendant "religious based declinations for the flu and tetanus vaccinations, which have been granted." *Id.* ¶ 12. Accordingly, Plaintiff requested a religious exemption form for Defendant's COVID-19 vaccine requirement policy in August 2021. *Id.* ¶ 13. To assist her in this effort, Plaintiff "us[ed] her own words as well as language from a template." *Id* ¶ 14. On or around August 31, 2021, Defendant provisionally approved her exemption request. *Id.* ¶ 17. However, on or around October 12, 2021, Defendant requested additional information from Plaintiff, expressing concern for use of templates and "chat groups" among its employees, though Plaintiff was never involved in any such groups. *Id.* ¶ 18–19.

The questions Defendant posed to Plaintiff in its request, and Plaintiff's answers submitted on or around October 15, 2021, are as follows:

---

[1] Reviewing Defendant's motion to dismiss, the Court accepts as true all facts alleged in the amended complaint and construes them in the light most favorable to Plaintiff. *See Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1157 (9th Cir. 2017).

[**1.**]
[Q] Have you ever received a vaccination or immunization as an adult? If so, when: How is the COVID-19 vaccine different[?]

[A] Yes, but while I have had vaccines in the past, my views have changed. My religious convictions no longer allow me to defile my body in a way that modifies the design of my immune system. I have declined vaccines for a number of years due to my sincerely held religious beliefs.

[**2.**]
[Q] What else besides the COVID-19 vaccine do you refuse to put in your body as a result of your religious belief?

[A] I refuse to put anything into my body which goes against my sincerely held religious beliefs. That includes any vaccine which alters my God given immune system.

[**3.**]
[Q] Have you put this belief into practice in any other areas of your life?

[A] My sincerely held religious beliefs are put into practice every day. All that I do, is done to glorify God.

[**4.**]
[Q] Have you ever taken another vaccine or medication as an adult? (Please answer yes or no. We are not asking you to tell us what medications you have taken and why you took them.) If so:

[A] Yes, but I was not aware then that by doing so, it was a sin to my soul. I do not take anything that is against my sincerely held religious beliefs.

[**5.**]
[Q] If you have taken other vaccines or medications knowing that they involved the use of fetal stems in some way: Please explain why receiving them did not violate your sincerely held religious beliefs.

[A] I have NEVER knowingly taken anything which included those substances.

>  **[6.]**
>  [Q] If you have taken other vaccines or medication but do not know whether they involved the use of fetal stem cells in any way:
>
>  [A] I have never knowingly taken anything which included those substances.
>
>  **[7.]**
>  [Q] Describe anything you did before taking them to find out whether they involved the use of fetal stem cells in any way. Did taking them violate your sincerely held religious belief?
>
>  [A] I am not aware that I have taken anything which contained those substances.
>
>  **[8.]**
>  [Q] If not, why not? If so, why were you willing to violate your belief as to them but not as to the COVID-19 vaccine?
>
>  [A] All vaccines are against my sincerely held religious beliefs and to take them would be against my God given conscience.
>
>  **[9.]**
>  [Q] Please resubmit your request for accommodation in your own words without using template or stock language from the internet or other sources.
>
>  [A] I have declined vaccines and will continue to do so due to my sincerely held religious beliefs. My body is a temple of the Holy Spirit and it is against my religious creed to defile my body with a vaccine that alters my God given immune system.

SAC ¶ 19–20.

On or around October 22, 2021, Plaintiff was informed her request for exemption was denied. *Id.* ¶ 22. Soon after, Defendant informed Plaintiff that she was not in compliance with its COVID-19 policy and that it was therefore placing her on unpaid leave. *Id.* ¶ 23. It also informed her that failure to comply with its vaccine policy by November 30, 2021, would result in termination of her employment. *Id.* On or about January 10, 2022, Defendant terminated Plaintiff for failing to comply with its vaccine policy. SAC ¶ 24. Prior to Plaintiff's termination, Defendant did not specify if her

religious exemption form or her responses to the "additional information questions" was deficient, nor was she given "an opportunity to supplement her application and responses for any perceived deficiencies." *Id.* ¶ 28.

Plaintiff filed her initial complaint on January 5, 2024. Doc. No. 1. After the Court granted in part Defendant's motion to dismiss this action, Defendant filed the operative SAC on October 17, 2024. Doc. Nos. 22, 24.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a claim must be facially plausible to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Assessing a motion to dismiss, the Court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Ninth Circuit has a liberal policy favoring amendments, and thus leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

## III. Discussion

In her second amended complaint, Plaintiff alleges four causes of action: (1) religious discrimination based on a failure to accommodate in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, ("Title VII"); (2) retaliation in violation of Title VII; (3) discrimination and retaliation on the basis of religious creed in violation of California Fair Employment and Housing Act, Cal. Govt. Code § 12900 *et seq.*, ("FEHA")[2]; (4) failure to provide religious accommodation in violation of FEHA; and (5) wrongful termination in violation of public policy. SAC ¶¶ 31–100.

### A. Failure to Accommodate/Religious Discrimination (Claims 1 & 4)

Defendant seeks to dismiss Plaintiff's first and fifth causes of action, failure to accommodate/discrimination claims under Title VII and FEHA, on the grounds that Plaintiff fails to adequately plead a bona fide religious belief or conflict between her alleged beliefs and Defendant's COVID-19 vaccine policy. Doc. No. 25 at 13–14.[3] Defendant also argues that Plaintiff failed to inform it of any purported conflict between her religious beliefs and its policy. *Id.* at 16.

Title VII prohibits an employer from discriminating against any employee or job applicant on the basis of religion. 42 U.S.C. § 2000e-2(a). "The . . . effect . . . is to make it an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for the religious practice of [its] employee[s] . . . ." *Heller v. EBB Auto. Co.*, 8 F.3d 1433, 1437 (9th Cir. 1993) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1976)). Title VII religious discrimination claims have a two-part framework, under which courts also evaluate FEHA claims. *See Heller*, 8 F.3d at 1438; *Keene v. City & Cnty. of S.F.*, No. 22-16567, 2023 WL 3451687, at *1 (9th Cir. 2023); *Borrello v. Respironics California, LLC*, No.

---

[2] This cause of action appears to both allege retaliation and duplicate the fourth cause of action's discrimination/failure to accommodate claim. SAC ¶¶ 55–69. The Court interprets this cause of action as a retaliation claim and the fourth cause of action as a discrimination/failure to accommodate claim.

[3] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

23-CV-580-GPC-VET, 2024 WL 1496215 *10 (S.D. Cal. Apr. 5, 2024). First, the employee must establish that: (1) the employee had a bona fide religious belief, the practice of which would conflict with an employment duty; (2) the employee informed their employer of the belief and conflict; and (3) the employer threatened or subjected the employee to discriminatory treatment because of the employee's inability to fulfill the job requirements. *Keene*, 2023 WL 3451687, at *1; *see also Heller*, 8 F.3d at 1438. However, "[this] *prima facie* case does not include a showing that the employee made any efforts to compromise his or her religious beliefs or practices before seeking an accommodation from the employer." *Heller*, 8 F.3d at 1438. If the employee makes out their *prima facie* case, the burden shifts to the employer to prove that they initiated good faith efforts to accommodate the employee's religious practices. *Id.*

In its Order granting in part and dismissing in part Defendant's first motion to dismiss, Doc. No. 22, the Court found Plaintiff's allegations insufficient to establish a bona fide religious belief. Doc. No. 22 at 7. Specifically, the Court found that her allegations failed because she merely

> allege[d] vague references to phrases such as "my body is a temple of the Holy Spirit," safety concerns regarding the vaccine as a "biological substance" that would "alter the design of [her] immune system" and refusal to participate in "pharmakeia," conscience-based justifications, assertions of "Constitutional" privileges, and "Christian faith" buzz words.

*Id.*

Whether the employee's belief is bona fide depends on whether it is: (1) sincerely held and (2) religious, in the employee's scheme of things. *Africa. v. Commonwealth of Pa.*, 662 F.2d 1025, 1030 (3d Cir. 1981). Three indicia can determine whether a religion exists. A religion: (1) addresses "fundamental and ultimate questions having to do with deep and imponderable matters;" (2) is a belief-system, comprehensive in nature; and (3) has certain recognizable formal and external signs. *Africa*, 662 F.2d at 1032; *Borrello v. Respironics California, LLC*, No. 23-CV-580-GPC-VET, 2024 WL 1496215 *11 (S.D.

Cal. Apr. 5, 2024) (under FEHA, courts analyze whether beliefs "(1) . . . 'address fundamental and ultimate questions having to do with deep and imponderable matters'; (2) . . . are 'comprehensive in nature; . . . consisting of a belief-system as opposed to an isolated teaching'; and (3) . . . 'can be recognized by the presence of certain formal and external signs.'") (cleaned up, internal quotation marks omitted); *see also Stephens v. Legacy-GoHealth Urgent Care*, No. 3:23-cv-00206-SB, 2023 WL 7612395, at *4 (D. Or. Oct. 23, 2023) (finding the *Africa* the factors provided helpful guideposts for analyzing whether a belief was religious in nature under a Title VII framework). When requesting a religious exemption, an employer may "require only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements." *Heller*, 8 F.3d 1433. While the belief should be "sincerely held," it "need not be consistent or rational to be protected under Title VII." *Keene*, 2023 WL 3451687 at *2. However, this "does not mean that courts must take plaintiffs' conclusory assertions of violations of their religious beliefs at face value." *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023); *see also Kather v. Asante Health Sys.*, No. 1:22-cv-1842, 2023 WL 4865533, at *5 (D. Or. July 28, 2023) ("[V]ague expressions of sincerely held Christian beliefs alone cannot serve as a blanket excuse for avoiding all unwanted employment obligations.").

   As a preliminary matter, the Court finds that so far as Plaintiff's re-alleges references beliefs that "[her] body is a temple of the Holy Spirit," or concerns that the vaccine is a "harmful substance," that "modifies [or alters] the design of [her] immune system" *see, e.g.*, SAC ¶ 9, 19, this language is still insufficient to communicate the religious nature of her beliefs for the same reasons described in the Court's order granting Defendant's first motion to dismiss. *See* Doc. No. 22 at 7 (citing *Bohlmann v. Kaiser Foundation Hospitals*, No. 3:23-CV-1322-JR, 2024 WL 2984517 *5 (D. Or. May 16, 2024), *R. & R. adopted* 2024 WL 2984498 (D. Or. June 4, 2024); *Prida v. Option Care Enters., Inc.*, No. 5:23-CV-00905, 2023 WL 7003402 *5 (N.D. Ohio Oct. 24, 2023)).

However, upon re-pleading, Plaintiff provides details sufficient to establish bona fide religious beliefs. She explains, for example, that she "believes in the doctrine of sanctity of life[,]" and that "[her] understanding that the manufacturers of the COVID-19 vaccine use aborted fetal tissue, the lining of aborted fetal tissue, or both forms of fetal tissue. Due to her pro-life beliefs, [her] faith strongly opposes injecting her body with the COVID-19 vaccine." SAC ¶¶ 10–11. Viewing the SAC in the light most favorable to Plaintiff, she clearly states therein that her religious beliefs oppose abortion, and that she believes the COVID-19 vaccine to be based, in its manufacture, upon aborted fetal tissue. *Id.* This is sufficiently descriptive to establish a bona fide religious belief. *See, e.g.*, *Shafer v. Legacy Health*, No. 3:23-CV-01543-HZ, 2024 WL 1932544 *3 (D. Or. May 2, 2024) ("Judges in this district have concluded that []invocation of an anti-abortion stance, guidance from spiritual leaders, and the use of fetal cells in developing COVID-19 vaccines appropriately alleged a bona fide religious belief.") (collecting cases). Likewise, this belief, which requires Plaintiff to refuse the COVID-19 vaccine, necessarily conflicts with Defendant's requirements that its employees must receive it.

However, Plaintiff cannot prevail on her claim merely by having bona fide religious beliefs. She must also have communicated those beliefs to her employer. *Heller*, 8 F.3d at 1438. In its order granting Defendant's first motion to dismiss, the Court found that, as with her failure to allege a bona fide religious belief, "Plaintiff does not explain her religious beliefs, nor does she explain how practicing them conflicted with her employment duties in her exemption request," and thus did not sufficiently plead the second element of her claim. Doc. No. 22 at 7. Evaluating her second amended complaint in full, Plaintiff still misses the mark. Though she explains that she "prepared her religious exemption using her own words as well as language from a template[,]" she provides the Court no insight as to what information or language that request contained.[4]

---

[4] Though Defendant attached a purported copy of Plaintiff's exemption request in its first motion to dismiss, Plaintiff does not allege those facts in or attach that document to her SAC. *See* Doc. No. 10-3. Therefore, the Court will not consider such external material in resolving the instant motion.

*See* SAC ¶ 14.  Likewise, while the now-extended follow-up questionnaire provides additional clarity to the parties' interactions after Plaintiff submitted her initial request, it does not support a conclusion, even in the light most generous to Plaintiff, that she sufficiently communicated the religious nature of her beliefs to Defendant.  The only new material facts not included in Plaintiff's initial complaint appear to be contained in questions 5–8 in the follow up questionnaire.  *Compare* Doc. No. 1 ("Compl.") ¶ 15, *with* SAC ¶ 19.  In these questions discussing medicines which use fetal stem cells, however, Plaintiff states only that she has never knowingly taken them.  *Id.*  She does not go so far as to communicate why that is the case, or that she holds a religious objection to fetal stem cell-based vaccines due to her anti-abortion beliefs—except for the vague, conclusory response to question eight that "[a]ll vaccines are against my sincerely held religious beliefs and to take them would be against my God given conscience."  SAC ¶ 19.  These additions do not demonstrate that she has done anything more than repeat the "threadbare references" to religious concepts that the Court already held insufficient.  Though Plaintiff now articulates her religious beliefs to the Court, what she communicated to Defendant prior to this action—the communications foundational to her claim—is simply insufficient.  *See, e.g. Weiss v. Permanente Med. Grp., Inc.*, --- F. Supp. 3d.----, No. 23-CV-03490-RS, 2024 WL 3090496 (N.D. Cal. Jun. 21, 2024); *Borello*, 2024 WL 1496215 at *10–13.

        Plaintiff also argues that Defendant failed to meet the requirement imposed by Cal. Gov. Code § 12940(l)(1), which requires that before denying a request for accommodation, Defendant must

> demonstrate[] that it has explored any available reasonable alternative means of accommodating the religious belief or observance, including the possibilities of excusing the person from those duties that conflict with the person's religious belief or observance or permitting those duties to be performed at another time or by another person, but is unable to reasonably accommodate the religious belief or observance without undue hardship . . . .

Doc. No. 24 at 16.  However, the Court determines, as have others before it, that

predicate to the requirement that Defendant explore alternatives accommodations Plaintiff must have communicated to Defendant the conflict between duties and beliefs, and the beliefs' religious nature. *See Andazola v. Permanente*, No. CV 23-10904-GW-BFMX, 2024 WL 3914610 *6–7 (C.D. Cal. Jul. 26, 2024), *adopted* sub nom. *Andazola v. Kaiser Permanente*, No. CV 23-10904-GW-BFMX, 2024 WL 4581515 *5–6 (C.D. Cal. Jul. 29, 2024); *Borrello*, 2024 WL 1496215 at *10–13. As discussed above, Plaintiff has not done so. Thus, the Court holds that Plaintiff still, upon amendment, does not sufficiently allege that she informed Defendant of her bona fide religious beliefs, and **GRANTS** Defendant's motion to dismiss as to Plaintiff's failure to accommodate/religious discrimination claims (Claims 1 & 4).

**B.     Retaliation (Claims 2 & 3)**

Defendant additionally seeks to dismiss Plaintiff's second and third causes of action alleging retaliation under Title VII and FEHA, arguing that she fails to adequately plead a causal link between a legally protected activity and an adverse employment action. Doc. No. 25 at 17. To establish a *prima facie* case of retaliation under Title VII and FEHA, a plaintiff must show that: (1) they engaged in a protected activity; (2) the employer subjected the employee to an adverse employment action; and (3) there was a causal link between the protected activity and the employer's action. *Yanowitz v. L'Oreal USA, Inc.*, 116 P.3d 1123, 1130 (Cal. 2005); *E.E.O.C. v. Dinuba Med. Clinic*, 222 F.3d 580, 596 (9th Cir. 2000) (quoting *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1012 (9th Cir. 1983)). Plaintiff, in her opposition to Defendant's motion to dismiss, argues that requesting a religious accommodation constitutes protected activity, and that "[s]oon after this submission of her request, Plaintiff was placed on unpaid leave and terminated from her employment. This proximity in time between Plaintiff's submission of her religious request and the adverse actions she suffered establishes a causal link for the purposes of a retaliation claim." Doc. No. 26 at 22.

Assuming her request for accommodations constitutes protected action, Plaintiff still fails to allege facts sufficient to state a retaliation claim. As with her initial

complaint, Plaintiff fails to establish a causal nexus between her request for accommodation and subsequent adverse employment action. Specifically, Plaintiff fails to allege facts sufficient to allege that she faced adverse employment action because of her request for accommodation, rather than because of her non-compliance with the vaccination policy itself.[5] *See, e.g.*, *Weiss*, 2023 WL 8420974 at *4 ("[The plaintiff] fails to provide sufficient facts establishing that she was terminated as a result of her exemption request and not because she failed to comply with the [p]olicy, which clearly mandated all employees be vaccinated unless an exemption is granted . . . .").

Plaintiff invokes the Supreme Court's decision in *Bostock v. Clayton County, Georgia*, for the proposition that, in short, an adverse employment action can have "multiple but-for causes." 590 U.S. 644, 656 (2020); *see also Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . ."). While Plaintiff is correct in her broad description of the *Bostock* Court's holding, she misapplies it. Though it is possible that an adverse action may have more than one but-for cause, Plaintiff still must plead facts that show it is "more than a sheer possibility" that retaliation was indeed a but-for cause of the adverse action at hand. *See Iqbal*, 556 U.S. at 679. Indeed, "where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* Plaintiff's temporal proximity arguments and pleadings simply do not sufficiently raise her retaliation claim beyond a mere possibility. Plaintiff claims that in early August 2021, Defendant issued a mandate that required all employees receive the COVID-19 vaccine or approved exemption before September 30 of that same year. SAC ¶ 6. Accordingly, Plaintiff submitted an exemption form in August 2021, which was provisionally approved that same month. *Id.* ¶ 13. It was not until October 2021, after the vaccination requirement went into effect, that Defendant requested more information

---

[5] In her SAC, Plaintiff employs the following language: "[o]n or about January 10, 2022, [Plaintiff] was terminated from her employment for failure to comply with [Defendant's] vaccine policy." SAC ¶ 24.

from Plaintiff, and not until later that month that her exemption was finally denied and she was placed on leave. *Id.* ¶¶ 18, 22–23. Defendant terminated Plaintiff in January 2022. *Id.* ¶ 24. Given this timeline and the fact that her initial request was, in fact, provisionally approved, Plaintiff's proximity in time argument alone cannot raise her retaliation claim above a merely speculative level. *See, e.g.*, *Andazola*, 2024 WL 3914610 at *9–10 (collecting cases).

Additionally, "[t]he 'but-for' causation," Plaintiff argues, "works against Defendant here, because Plaintiff must simply allege facts to support her assertion that Defendant discriminated against her." Doc. No. 26 at 23. Here, Plaintiff is incorrect. To plead a retaliation claim, she must allege that the protected action itself—her requesting an accommodation—was a but-for cause of the adverse action she faced, not merely that "Defendant discriminated against her" based on her religious beliefs. *See Yanowitz*, 116 P.3d at 1130; *Dinuba Med. Clinic*, 222 F.3d at 596. This critical distinction differentiates a classic discrimination claim from a retaliation claim. *Cf. Sias v. City Demonstration Agency*, 588 F.2d 692, 694–96 (9th Cir. 1978) (holding that retaliation claims may succeed despite no underlying discriminatory practice having occurred, as retaliation claims rely on actions taken in response to perceived discrimination rather than discrimination itself); *accord Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130 (5th Cir. 1981), *cert. denied* 455 U.S. 1000 (1982). Because Plaintiff has not pleaded allegations that render her retaliation claims facially plausible, the Court **GRANTS** Defendant's motion to dismiss as to those claims (Claims 2 & 3).

C.     **Termination in Violation of Public Policy (Claim 5)**

Finally, Defendant seeks to dismiss Plaintiff's fifth cause of action, termination in violation of public policy, asserting that it is a derivative claim which cannot succeed if the others fail. Doc. No. 25 at 19–20. A plaintiff claiming termination in violation of public policy must allege: (1) an employer-employee relationship; (2) that the employer terminated their employment; (3) that the termination was substantially motivated by a violation of public policy; and (4) that the discharge caused the plaintiff harm. *Yau v.*

*Santa Margarita Ford, Inc.*, 229 176 Cal. Rptr. 3d 824, 831 (Cal. Ct. App. 2014) (citing *Haney v. Aramark Unif. Servs., Inc.*, 17 Cal. Rptr. 3d 336, 348–49 (Cal. Ct. App. 2004)).

Plaintiff, in her opposition, claims that this cause of action is "predicated" upon her FEHA claims, and that because she states a claim for relief under FEHA, it must survive dismissal as well. Doc. No. 26 at 25. However, "[b]ecause Plaintiff has failed to state a claim as to religious discrimination, failure to accommodate, [and] retaliation . . . [s]he cannot rest on these claims to show that [Defendant's] behavior violated the public's interest in addition to [her] own," as her FEHA claims' dismissal leaves her unable to establish the necessary nexus between a public policy violation and her termination. *Borello*, 2024 WL 1496215 at *17. Therefore, the Court **GRANTS** Defendant's motion to dismiss as to Plaintiff's claim for termination in violation of public policy (5).

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss **without prejudice and with leave to amend**. Any third amended complaint will be the operative pleading and must be filed on or before **February 14, 2025**. Defendant must respond within the time prescribed by Federal Rule of Civil Procedure 15. Any claim not re-alleged and any defendant not named in the third amended complaint will be considered waived. *See* CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that after dismissal with leave to amend, claims may be "considered waived if not repled"). <u>The third amended complaint must be accompanied by a version of that pleading that shows—through redlining or similar method—how that pleading differs from the previously dismissed pleading.</u> *See* CivLR 15.1.c.

**IT IS SO ORDERED**.

Dated: January 22, 2025

HON. MICHAEL M. ANELLO
United States District Judge