1
2
3
4
5
6
7
8
9
10    **UNITED STATES DISTRICT COURT**
11    **SOUTHERN DISTRICT OF CALIFORNIA**
12

13    SHARRY ASHCROFT,                    Case No. 24-cv-0035-MMA-MMP
14                          Plaintiff,
                                         **ORDER DENYING MOTION TO**
15    v.                                 **DISMISS**
16    SOUTHERN CALIFORNIA                 [Doc. No. 31]
      PERMANENTE MEDICAL GROUP,
17                          Defendant.
18
19
20
21

22        On February 28, 2025, Defendant Southern California Permanente Medical Group
23    ("Defendant") filed a motion to dismiss Plaintiff Sharry Ashcroft's ("Plaintiff") third
24    amended complaint.  Doc. No. 31.  Plaintiff filed a response in opposition, to which
25    Defendant replied.  Doc. Nos. 32, 34.  On April 1, 2025, the Court found this matter
26    suitable for determination on the papers and without oral argument pursuant to Federal
27    Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1.  Doc. No. 36.  For the
28    reasons below, the Court **DENIES** Defendant's motion to dismiss.

# I. BACKGROUND[1]

Defendant, a private health care organization, employed Plaintiff as an office assistant.  Doc. No. 30[2] ("TAC") ¶¶ 3–4.  In early August 2021, following the COVID-19 pandemic's outbreak, Defendant issued a requirement that all employees receive COVID-19 vaccinations before September 30, 2021, or otherwise obtain a medical or religious exemption.  *Id.* ¶¶ 7–8.  Plaintiff, however, "is a follower of the Christian faith" who believes "that her body belongs to God and is a temple of the Holy Spirit" that "it is against [her] religious beliefs to ingest or inject her body with possible harmful substances" and that her "[d]ue to her pro-life beliefs, [her] faith strongly opposes injecting her body with the COVID-19 vaccine[]" as she believes that the manufacturers of the vaccine use aborted fetal tissue, the lining of aborted fetal tissue, or both in producing the vaccine.  *Id.* ¶¶ 8–11.  While she was unwilling to receive the COVID-19 vaccination, she was "willing to adhere to safety protocols, such as regular testing and masking." *Id.* ¶ 17.

On previous occasions, Plaintiff provided Defendant "religious based declinations for the flu and tetanus vaccinations, which have been granted."  *Id.* ¶ 12.  Accordingly, Plaintiff requested a religious exemption for Defendant's COVID-19 vaccine requirement policy in August 2021.  *Id.* ¶ 13; Doc. No. 30 at 21–26 ("Ex. 1").  To assist her in this effort, Plaintiff "us[ed] her own words as well as language from a template." *Id* ¶ 14.  On or around August 31, 2021, Defendant provisionally approved her request.  *Id.* ¶ 18.  However, on or around October 12, 2021, Defendant requested additional information from Plaintiff, expressing concern for use of templates and "chat groups" among its employees, though Plaintiff was never involved in any such groups.  *Id.* ¶ 19–20.

---

[1] Reviewing Defendant's motion to dismiss, the Court accepts as true all facts alleged in the amended complaint and construes them in the light most favorable to Plaintiff.  *See Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1157 (9th Cir. 2017).

[2] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

The questions Defendant posed to Plaintiff in its request, and Plaintiff's answers submitted on or around October 15, 2021, are as follows:

[**1.**]
[Q] Have you ever received a vaccination or immunization as an adult? If so, when: How is the COVID-19 vaccine different[?]

[A] Yes, but while I have had vaccines in the past, my views have changed. My religious convictions no longer allow me to defile my body in a way that modifies the design of my immune system.  I have declined vaccines for a number of years due to my sincerely held religious beliefs.

[**2.**]
[Q] What else besides the COVID-19 vaccine do you refuse to put in your body as a result of your religious belief?

[A] I refuse to put anything into my body which goes against my sincerely held religious beliefs.  That includes any vaccine which alters my God given immune system.

[**3.**]
[Q] Have you put this belief into practice in any other areas of your life?

[A] My sincerely held religious beliefs are put into practice every day.  All that I do, is done to glorify God.

[**4.**]
[Q] Have you ever taken another vaccine or medication as an adult? (Please answer yes or no.  We are not asking you to tell us what medications you have taken and why you took them.) If so:

[A] Yes, but I was not aware then that by doing so, it was a sin to my soul.  I do not take anything that is against my sincerely held religious beliefs.

[**5.**]
[Q] If you have taken other vaccines or medications knowing that they involved the use of fetal stems in some way: Please explain why receiving them did not violate your sincerely held religious beliefs.

[A] I have NEVER knowingly taken anything which included those substances.

[**6.**]
[Q] If you have taken other vaccines or medication but do not know whether they involved the use of fetal stem cells in any way:

[A] I have never knowingly taken anything which included those substances.

[**7.**]
[Q] Describe anything you did before taking them to find out whether they involved the use of fetal stem cells in any way.  Did taking them violate your sincerely held religious belief?

[A] I am not aware that I have taken anything which contained those substances.

[**8.**]
[Q] If not, why not?  If so, why were you willing to violate your belief as to them but not as to the COVID-19 vaccine?

[A] All vaccines are against my sincerely held religious beliefs and to take them would be against my God given conscience.

[**9.**]
[Q] Please resubmit your request for accommodation in your own words without using template or stock language from the internet or other sources.

[A] I have declined vaccines and will continue to do so due to my sincerely held religious beliefs.  My body is a temple of the Holy Spirit and it is against my religious creed to defile my body with a vaccine that alters my God given immune system.

TAC ¶ 19–21; Doc. No. 30 at 26–32 ("Ex. 2") p. 3–4.

On or around October 22, 2021, Plaintiff was informed her request for exemption was denied.  TAC. ¶ 24.  Soon after, Defendant informed Plaintiff that she was not in compliance with its COVID-19 policy and that it was therefore placing her on unpaid leave.  *Id.* ¶ 25.  It also informed her that failure to comply with its vaccine policy by

November 30, 2021, would result in termination of her employment.  *Id.*  On or about January 10, 2022, Defendant terminated Plaintiff for failing to comply with its vaccine policy.  *Id.*  ¶ 26.  Prior to Plaintiff's termination, Defendant did not specify if her religious exemption form or her responses to the additional questions were deficient, nor was she given "an opportunity to supplement her application and responses for any perceived deficiencies."  *Id.* ¶ 23, 30, 31.

Plaintiff filed her initial complaint on January 5, 2024.  Doc. No. 1.  After the Court granted in part Defendant's motion to dismiss this action, Defendant filed the Her second amended complaint on October 17, 2024.  Doc. Nos. 22, 24.  Upon Defendant's second motion to dismiss, the Court dismissed Plaintiff's complaint in its entirety, with leave to amend.  Doc. Nos. 25, 29.  Plaintiff filed the operative TAC on February 14, 2025.  Doc. No. 30.

## II. REQUEST FOR JUDICIAL NOTICE

Alongside her response in opposition, Plaintiff request that the Court take judicial notice of a tentative decision in the California Superior Court, County of Los Angeles, case *Katherine Katz v. County of Los Angeles*, Case No. 23STCV23907.  Doc. No. 33. Plaintiff attaches a copy and provides the state court website from which one can access the original.  *Id.*; Doc. No. 33-1.  Defendant opposes judicial notice, arguing that "there is no basis to take judicial notice of legal authority" because "judicial notice is reserved for adjudicative fact[s] only."  Doc. No. 35 at 2 (quoting *Nguyen v. Cavalry Portfolio Servs., LLC*, No. 3:15-cv-00063-CAB-BLM, 2015 WL 12672149 *2 (S.D. Cal. Feb. 20, 2015)).

Though review of a motion to dismiss is generally limited to the contents of a complaint, the Court may consider certain materials, including matters of judicial notice. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Pursuant to Federal Rule of Evidence 201, a judicially noticeable fact is one that is not subject to reasonable dispute because it is generally known within the jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  This can include information on government websites, as well as

1   "official acts" of government officials, legislatures, or agencies.  *See Daniels-Hall v.*

2   *Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010); *Gallagher v. Philipps*, 563 F.

3   Supp. 3d 1048, 1070–71 (S.D. Cal. 2021); *Greenfield MHP Assocs., L.P. v. Ametek, Inc.*,

4   145 F. Supp. 3d 1000, 1007 (S.D. Cal. 2015).  The Court may also "take judicial notice of

5   court filings and other matters of public record."  *Reyn's Pasta Bella, LLC v. Visa USA,*

6   *Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

7       Federal courts generally do not take judicial notice of other courts' opinions or

8   decisions, as they are not "adjudicative facts," so much as legal authority that courts

9   "routinely consider[] . . . in doing . . . legal analysis . . . ."  *Nguyen*, 2015 WL 12672149

10  at *2 (quoting *Lucero v. Wong,* No. C 10-1339 SI PR, 2011 WL 5834963 *5 (N.D. Cal.

11  Nov. 21, 2011)).  As the *Lucero* court, quoted in *Nguyen*, further notes, "[t]o the extent . .

12  . the existence of published or unpublished cases [are] judicially noticed as adjudicative

13  facts, doing so is of very limited value because the court can take notice that such

14  decisions exist, but the court does not take judicial notice that those decisions are

15  correct."  *Id.* (quoting *Lucero*, 2011 WL 5834963 at *5).

16      Plaintiff's proposed item for notice is an official—if tentative—government act

17  and court record found on an official government website.  Therefore, the Court

18  determines this item is judicially noticeable and **GRANTS** Plaintiff's request for judicial

19  notice.  However, as *Nguyen* and *Lucero* correctly direct, the Court takes notice only that

20  this tentative decision exists, not that it is correct.  *See Nguyen*, 2015 WL 12672149 at *2

21  (quoting *Lucero*, 2011 WL 5834963 at *5).

22                  **III. LEGAL STANDARD**

23      A Rule 12(b)(6) motion to dismiss tests a complaint's sufficiency.  *Navarro v.*

24  *Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "While a complaint . . . does not need detailed

25  factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to

26  relief requires more than labels and conclusions, and a formulaic recitation of the

27  elements of a cause of action will not do.  Factual allegations must be enough to raise a

28  right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (internal quotations, brackets, and citations omitted).  Rule 12(b)(6) requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Upon review, the Court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  Legal conclusions need not be taken as true merely because they are cast in the form of factual allegations.  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."  *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).  In determining the propriety of dismissal, generally, a court generally may not look beyond the complaint for additional facts.  *Id.*; *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998).

When granting dismissal, the court must also decide whether to grant leave to amend.  The Ninth Circuit has a liberal policy favoring amendments, and thus leave to amend should be freely granted.  *See, e.g.*, *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  However, a court need not grant leave to amend when permitting a plaintiff to amend would be futile.  *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

## IV. DISCUSSION

Defendant seeks to dismiss Plaintiff's three remaining causes of action: (1) religious discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") based on a failure to accommodate Plaintiff's religious beliefs; (2) religious discrimination in violation of the California Fair Employment and Housing Act ("FEHA") based on a failure to accommodate Plaintiff's religious beliefs; and (3) wrongful termination in violation of public policy.  Doc. No. 31.  Plaintiff argues that

1    she has sufficiently pleaded all causes of action.  Doc. No. 32.  The Court will address

2    each.

3    **A.    Failure to Accommodate**

4         Defendant seeks once again to dismiss Plaintiff's first and second causes of action:

5    religious discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title

6    VII") based on a failure to accommodate Plaintiff's religious beliefs, and religious

7    discrimination in violation of the California Fair Employment and Housing Act

8    ("FEHA") based on a failure to accommodate Plaintiff's religious beliefs.  Doc. No. 31.

9    Specifically, Defendant asserts that Plaintiff has not made sufficient allegations that she

10   informed Defendants of a *bona fide* religious belief that conflicts with Defendant's

11   vaccination requirement.  *Id.* at 8–10.  Plaintiff responds that she both identifies a *bona*

12   *fide* religious belief and sufficiently communicated a conflict.  Doc. No. 32 at 14–23.

13        Title VII prohibits an employer from discriminating against any employee or job

14   applicant on the basis of religion.  42 U.S.C. § 2000e-2(a).  "The . . . effect . . . is to make

15   it an unlawful employment practice . . . for an employer not to make reasonable

16   accommodations, short of undue hardship, for the religious practice of [its]

17   employee[s] . . . ."  *Heller v. EBB Auto. Co.*, 8 F.3d 1433, 1437 (9th Cir. 1993) (quoting

18   *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1976)).  Title VII religious

19   discrimination claims have a two-part framework, under which courts also evaluate

20   FEHA claims.  *See Heller*, 8 F.3d at 1438; *Borrello v. Respironics California, LLC*, No.

21   23-CV-580-GPC-VET, 2024 WL 1496215 *10 (S.D. Cal. Apr. 5, 2024) *Keene v. City &*

22   *Cnty. of S.F.*, No. 22-16567, 2023 WL 3451687, at *1 (9th Cir. 2023).  First, the

23   employee must establish that: (1) the employee had a *bona fide* religious belief, the

24   practice of which would conflict with an employment duty; (2) the employee informed

25   their employer of the belief and conflict; and (3) the employer threatened or subjected the

26   employee to discriminatory treatment because of the employee's inability to fulfill the job

27   requirements.  *Heller*, 8 F.3d at 1438; *see also Keene*, 2023 WL 3451687, at *1.

28   However, "[this] *prima facie* case does *not* include a showing that the employee made

any efforts to compromise his or her religious beliefs or practices before seeking an accommodation from the employer." *Heller*, 8 F.3d at 1438 (emphasis original). If the employee makes a *prima facie* case, the burden shifts to the employer to prove that they initiated good faith efforts to accommodate the employee's religious practices. *Id.*

In its order on Defendant's first motion to dismiss, the Court found that Plaintiff's allegations were insufficient to establish a bona fide religious belief because she

> allege[d] vague references to phrases such as "my body is a temple of the Holy Spirit," safety concerns regarding the vaccine as a "biological substance" that would "alter the design of [her] immune system" and refusal to participate in "pharmakeia," conscience-based justifications, assertions of "Constitutional" privileges, and "Christian faith" buzz words.

Doc. No. 22 at 7. It reaffirmed this finding in its second order, but found that "Plaintiff . . . clearly states therein that her religious beliefs oppose abortion, and that she believes the COVID-19 vaccine to be based, in its manufacture, upon aborted fetal tissue. This is sufficient[] . . . to establish a *bona fide* religious belief." Doc. No. 29 at 8–9 (internal citation omitted). Plaintiff now argues, again, that the Court erred in finding that "her allegations pertaining to her body as a temple of the Holy Spirit which she cannot defile are insufficient to communicate the religious nature of her beliefs." Doc. No. 32 at 14–15.

Whether the employee's belief is *bona fide* depends on whether it is: (1) sincerely held and (2) religious, in the employee's scheme of things. *See Africa. v. Commonwealth of Pa.*, 662 F.2d 1025, 1030 (3d Cir. 1981); *cf. Alvarado v. City of San Jose*, 94 F.3d 1223, 1229 (9th Cir. 1996), *as amended* (Sept. 19, 1996) (citing *Africa* favorably). Three indicia that a belief is religious are whether it: (1) addresses "fundamental and ultimate questions having to do with deep and imponderable matters;" (2) is a belief-system, comprehensive in nature; and (3) has certain recognizable formal and external signs. *Africa*, 662 F.2d at 1032; *Borrello v. Respironics California, LLC*, No. 23-CV-580-GPC-

VET, 2024 WL 1496215 *11 (S.D. Cal. Apr. 5, 2024) (under FEHA, courts analyze whether beliefs "(1) . . . 'address fundamental and ultimate questions having to do with deep and imponderable matters'; (2) . . . are 'comprehensive in nature; . . . consisting of a belief-system as opposed to an isolated teaching'; and (3) . . . 'can be recognized by the presence of certain formal and external signs.'") (cleaned up, internal quotation marks omitted); *see also Stephens v. Legacy-GoHealth Urgent Care*, No. 3:23-cv-00206-SB, 2023 WL 7612395, at *4 (D. Or. Oct. 23, 2023) (finding the *Africa* factors helpful guideposts for analyzing Title VII).  While the belief should be "sincerely held," it "need not be consistent or rational to be protected under Title VII."  *Keene*, 2023 WL 3451687 at *2.  However, this "does not mean that courts must take . . . conclusory assertions of violations of their religious beliefs at face value."  *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023).

Plaintiff now includes a purported version of her original exemption request, referenced in her first amended complaint and attached to Defendant's first motion to dismiss.  Within, she states:

> I am writing to request a religious exemption from vaccines because these are violations of my sincerely held religious beliefs. 'Do you not know that your bodies are temples of the Holy Spirit, who is in you, whom you have received from God?' (1 Cor 6:19).  As a Christian and a member of the Body of Christ, my sincerely held religious beliefs are an all-encompassing aspect of my life. My religious beliefs are protected and guaranteed by the US Constitution and the Constitution of this state.  My sincerely-held Christian beliefs DO NOT ALLOW ME to have a biological substance injected into my body.  My blood is sacred and life is found in the blood.  My own salvation was bought and paid for by the blood of Jesus Christ and I CANNOT taint my blood with vaccines. The Bible warns against this type of pharmakeia, and I will not violate my sincerely-held Christian beliefs.  The body is the temple of the Holy Spirit and as such, should not be used for such medical treatments.

Ex. 1.  at 3–4.

Plaintiff points to decisions by other Ninth Circuit district courts, dealing with similar language, to support her conclusion that her "temple of the Holy Spirit" wording

1  establishes a *bona fide* religious belief.  *See, e.g.*, *Thompson v. Asante Health Sys.*, No.

2  1:23-CV-00486-CL, 2023 WL 7348812 *5 (D. Or. Sept. 21, 2023), *R&R adopted*, No.

3  1:23-CV-00486-CL, 2023 WL 7326496 (D. Or. Nov. 7, 2023); *Camp v. L.A. Arena Co.,*

4  *LLC*, No. EDCV 22-2220 JGB (KKX), 2023 WL 4680797 *2, 7 (C.D. Cal. June 15,

5  2023); *cf Beuca v. Washington State Univ.,* No. 2:23-CV-0069-TOR, 2023 WL 3575503

6  *2 (E.D. Wash. May 19, 2023)*, rev'd and remanded on other grounds*, No. 23-35395,

7  2024 WL 3450989 (9th Cir. Jul. 18, 2024).  Plaintiff likewise identifies recent decisions

8  from circuit courts of appeal in support.  *See Thornton v. Ipsen Biopharmaceuticals, Inc.*,

9  126 F.4th 76, 83 (1st Cir. 2025); *Lucky v. Landmark Med. of Michigan, P.C.*, 103 F.4th

10  1241, 1243 (6th Cir. 2024); *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 902

11  (8th Cir. 2024); *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1009 (7th Cir. 2024).

12       Though Plaintiff has, in previous iterations of her briefing, cited to some of these

13  authorities before, the Court finds her expanded pleadings and arguments are persuasive.

14  Especially convincing is the First Circuit's *Thornton* holding that similarly-worded

15  requests demonstrate not "'isolated moral teaching[s],' but rather . . . part of a

16  'comprehensive system of beliefs about fundamental or ultimate matters[,]'" a concern

17  this Court drew as to Plaintiff's request in prior iterations of this motion.  *Thornton*, 126

18  F.4th at 83.   That court also collects additional similar cases, including some that

19  Plaintiff cites here, suggesting a growing agreement among the circuits as to similar

20  language, variations of which appear to have cropped up *en masse* in opposition to

21  COVID-19 mandates.  *Id.* at 83–84 (citing, for example, *Barnett v. Inova Health Care*

22  *Servs.*, 125 F.4th 465, 471 (4th Cir. 2025), *Passarella*, and *Ringhofer*).  The only

23  explicitly contrary decisions among federal courts of appeal, to this Court's assessment,

24  are two unreported cases from the Third Circuit.  *See McDowell v. Bayhealth Med. Ctr.,*

25  *Inc.,* No. 24-1157, 2024 WL 4799870 *2–3 (3d Cir. Nov. 15, 2024); *Gatto v. Johnson &*

26  *Johnson Servs., Inc.*, No. 24-1992, 2025 WL 816732 *1–4 (3d Cir. Mar. 14, 2025)

27  (noting that "body is a temple of the Holy Spirit which would be violated by the nasal

28  swab tests" is "based on [the plaintiff's] personal and medical preference, not religion").

Given Plaintiff's arguments, her inclusion of the original request for accommodations in the TAC, the appellate courts' general vector in similar cases since this action was filed, and the Ninth Circuit's admonition that "the burden to allege a conflict with religious beliefs is fairly minimal[,]" *Bolden-Hardge*, 63 F.4th at 1223, the Court determines that Plaintiff is correct and reverses its previous findings on this element. Though Plaintiff did not articulate her religious beliefs so cleanly in her request as she does in her opposition, the Court finds that she makes references to overarching religious beliefs and sufficient connection to her anti-vaccine position, for example, that her "sincerely-held Christian beliefs DO NOT ALLOW ME to have a biological substance injected into my body. My blood is sacred and life is found in the blood. My own salvation was bought and paid for by the blood of Jesus Christ and I CANNOT taint my blood with vaccines." Ex. 1 at 2–3. This articulates, at minimum, a connection between her belief concerning vaccines and her belief in the existence of a higher power or deity. *Id.* It also evidences an overarching belief that her blood is sacred due to "salvation bought and paid for by the blood of Jesus Christ" and that therefore nothing can be injected into it, rather than a merely scientific or moral objection to a single vaccine. Ex. 1 at 2–3. Plaintiff likewise quotes a Bible verse, demonstrating a connection between her beliefs and external and established religious belief systems. *Id.*

While the cases discussed above each differ slightly from the facts here, they are sufficiently analogous and contain similar recitations to Plaintiff's request, albeit often with additional details to allow inference into the respective requests' religious nature. *See, e.g.*, *Lucky*, 103 F.4th at 1243 ("She pled further that—as to the Covid vaccine in particular—'God spoke to [her] in her prayers and directed her that it would be wrong to receive the COVID-19 vaccine.'"). As Plaintiff noted in its reply here and in briefing its first motion to dismiss, when this issue was first raised, this is certainly not a finding unanimously shared by Ninth Circuit trial courts. *See* Doc. No. 15 at 9–12 (collecting cases); Doc. No. 34 at 7–9. It is, however, how this Court determines the Ninth Circuit and U.S. Supreme Court would rule under the circumstances. *See Bolden-Hardge*, 63

F.4th at 1223 ("The Supreme Court has . . . cautioned against second-guessing the reasonableness of an individual's assertion that a requirement burdens her religious beliefs, emphasizing that a court's "'narrow function . . . in this context is to determine' whether the line drawn reflects 'an honest conviction.'") (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014). Thus, at this stage in proceedings, Plaintiff sufficiently alleges a *bona fide* religious belief.

With this new finding in mind, the Court now examines whether Plaintiff sufficiently pleads that she communicated these religious beliefs and conflict with employment requirements to Defendant. A plaintiff must provide "only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements." *Heller*, 8 F.3d at 1439. As with its prior order, the Court first finds no new facts to suggest that Plaintiff informed Defendant of her "religious objection to fetal stem cell-based vaccines due to her anti-abortion beliefs . . . ." Doc. No. 29 at 10. However, Plaintiff clearly does communicate that her "sincerely-held Christian beliefs DO NOT ALLOW ME to have a biological substance injected into my body. My blood is sacred and life is found in the blood. My own salvation was bought and paid for by the blood of Jesus Christ and I CANNOT taint my blood with vaccines[,]" that "the body is a temple of the 'Holy Spirit[,]'" and that that her beliefs "prevent her from receiving a biological substance into her body" in her initial request for exemption. Ex. 1 at 3–4. This evinces a clear conflict between Plaintiff's religious beliefs, which prohibit vaccination, and Defendant's vaccine requirement, which mandates it.

Finally, Plaintiff sufficiently alleges the third element of a failure to accommodate claim, namely that her request was denied and that she was terminated for failing to comply with Defendant's vaccine requirement, a failure caused by her religious objection to vaccination. TAC ¶¶ 24–26. Plaintiff also alleges that, after submitting responses to Defendant's questionnaire requesting additional information, she was "never contacted . . . with any questions" and that Defendant did not take any additional steps to consider

possible accommodations.  *Id.* at 23, 30, 31.  Therefore, the Court **DENIES** Defendant's motion to dismiss as to Plaintiff's first and second causes of action.

**B.    Wrongful Termination in Violation of Public Policy**

Defendant seeks to dismiss Plaintiff's final cause of action, wrongful termination in violation of public policy, asserting that it is a derivative claim that cannot succeed if her others fail.  Doc. No. 31 at 10.  A plaintiff claiming termination in violation of public policy must allege: (1) an employer-employee relationship; (2) that the employer terminated their employment; (3) that the termination was substantially motivated by a violation of public policy; and (4) that the discharge caused the plaintiff harm.  *Yau v. Santa Margarita Ford, Inc.*, 176 Cal. Rptr. 3d 824, 831 (Cal. Ct. App. 2014) (citing *Haney v. Aramark Unif. Servs., Inc.*, 17 Cal. Rptr. 3d 336, 348–49 (Cal. Ct. App. 2004)).  One category of conduct subject to protection under a claim of wrongful termination in violation of public policy is an employee's "exercising a statutory right or privilege." *Yau*, 176 Cal. Rptr. 3d at 831 (quoting *Casella v. SouthWest Dealer Serv., Inc.* (2007) 69 Cal. Rptr. 3d 445, 454 (Cal. Ct. App. 2007).  FEHA and Title VII claims "may provide the policy basis for a claim for wrongful discharge in violation of public policy." *Phillips v. St. Mary Reg'l Med. Ctr.*, 116 Cal. Rptr. 2d 770, 776, 784–85 (Cal. Ct. App. 2002).  As she maintains claims both for violation of FEHA and Title VII, Plaintiff's wrongful termination in violation of public policy claim may proceed as a derivative.  The Court thus **DENIES** Defendant's motion to dismiss that claim.

## IV.  CONCLUSION

Based upon the foregoing, the Court **DENIES** Defendant's motion to dismiss. Defendant must file its answer to the third amended complaint within <u>fourteen (14) days</u> of the date of this Order.  Fed. R. Civ. P. 12(a)(4)(A).

**IT IS SO ORDERED**.

Dated:  April 21, 2025

HON. MICHAEL M. ANELLO
United States District Judge